IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESSIE MILLS-SORRELLS | : | CIVIL ACTION |
| *o/b/o Maziah Mills-Sorrells* | : | |
| | : | No. 13-6593 |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| *Acting Commissioner of the Social* | : | |
| *Security Administration* | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                    **December 21, 2015**

This is an appeal from the Commissioner of Social Security's denial of Supplemental Security Income (SSI) to Maziah Mills-Sorrells, a four-year old girl whose left arm was permanently paralyzed at birth. Maziah's mother, Essie Mills-Sorrells (Mills-Sorrells), filed this action on Maziah's behalf and now objects to the United States Magistrate Judge's Report and Recommendation (Report) recommending the Court deny her request for review. Because the Court agrees the Commissioner's denial of benefits was not supported by substantial evidence, Mills-Sorrells's objections will be sustained in part. And, because the Court finds substantial evidence supports the conclusion that Maziah was disabled as a result of her paralysis and is entitled to SSI, the Court will remand this case so the Commissioner may calculate an award of benefits.

## BACKGROUND

When Maziah was born on June 22, 2011, three weeks early, doctors immediately noticed she was not moving her left arm. R. 218. She was initially diagnosed with Erb's Palsy, R. 218, but, at two months of age, was diagnosed with Klumpke's paralysis, a more serious condition.[1]

---

[1]Klumple's paralysis results from injury to the brachial plexus, the network of spinal nerves in and around the thorax, and often arises from birth trauma. R. 161-62.

R. 222. At two months, Maziah still could not move her left hand or arm, R. 201, and her physical abilities were evaluated as 100% developmentally delayed, R. 202. By the time Maziah was three months, she was able to move her shoulder, R. 223; however, her left hand and part of her left arm were still completely limp, were cooler than the right side, and appeared atrophied, R. 221-22. As a result, Maziah was assigned weekly occupational or physical therapy through ChildLink, an early intervention service, R. 275, and the Children's Hospital of Philadelphia (CHOP), R. 41-42. Despite extensive physical and occupational therapy, Maziah failed to make any significant recovery in her left upper extremity. R. 263, 296.

When Maziah was four months old, she saw Dr. Gregory Heuer, a CHOP neurosurgeon, who opined Maziah would likely need surgical intervention involving nerve grafts and transfers to correct her significant left side brachial plexus injury. R. 267. At a pre-surgery follow-up visit a month later, Dr. Heuer noted improvement in Maziah's elbow extension, but observed she still lacked spontaneous movement in her left hand, and flexion or extension in her fingers or wrist. R. 263, 266.

On January 23, 2012, when Maziah was seven months old, she underwent surgery to repair her left brachial plexus. R. 262. The surgery did not improve Maziah's left side function: at a follow-up visit when she was 13 months old, Maziah could only flex at her shoulder to about 30 degrees and lacked elbow flexion or extension, as well as wrist and finger movement. R. 268. Before the surgery, in comparison, Maziah could flex her left arm close to shoulder level. R. 268. Further, Maziah's pain and temperature sensation had decreased in her left arm, and her reflexes in her left arm were absent. R. 270. While Maziah could sit unsupported and get to sitting if she was lying on her right side, roll "to everywhere," bear weight if she was leaning on something, and stand without support, she could not pull to stand. R. 268. The examining neurologist, Dr.

Sabrina Yum, expressed concern about Maziah's lack of progress and long-term prognosis, R. 271.

According to a November 12, 2012, function report completed by Katherine Crozier, Education Supervisor at ChildLink, Maziah could stand with help, but she could not crawl, stand without help, walk holding on to someone or something or without holding on, climb onto furniture, throw a ball or other object, dance or jump up and down, walk up and down steps by herself, run with or without falling, stack blocks 2-6 high, push and pull small toys, hold or scribble with a crayon or pencil, feed herself with a spoon, or undress herself. R. 356-57.

Two months after Maziah's birth, Mills-Sorrells filed for SSI on Maziah's behalf. When the claim was denied on October 21, 2011, Mills-Sorrells requested a hearing before an ALJ, which was held November 13, 2012. In a decision issued December 3, 2012, the ALJ concluded Maziah was not disabled within the meaning of the Social Security Act as of August 11, 2011. R. 17, 23, 31. The ALJ found although Maziah had Klumpke's paralysis, a severe impairment, it did not meet or medically equal the criteria of any impairment in the Listing of Impairments. R. 20. The ALJ also concluded Maziah's impairment did not functionally equal the severity of a Listing because she did not have an impairment or combination of impairments resulting in either marked limitations in two domains of functioning or an extreme limitation in one domain. R. 20.[2] Mills-Sorrells subsequently appealed to the Appeals Council, which denied her request for review, rendering the ALJ's decision final. R. 1.

---

[2] The ALJ found Maziah suffered from a marked limitation in the domain of moving about and manipulating objects, R. 28, a less than marked limitation in the domains of acquiring and using information, interacting and relating with others, and health and physical well-being, R. 24, 27, 31, and no limitation in the domains of attending and completing tasks, and caring for oneself, R. 26, 30.

Mills-Sorrells commenced this action on November 12, 2013. The matter was referred to a United States Magistrate Judge for a Report and Recommendation, which was issued February 27, 2015, and to which Mills-Sorrells filed timely objections. While this matter was pending, Mills-Sorrells filed a second SSI application for Maziah. On May 12, 2014, the state agency medical reviewer determined Maziah had been disabled under the Act since December 1, 2013, as her conditions medically equaled Listing 111.06A. Pl.'s Mot. to Remand Ex. A., at 7.

**DISCUSSION**

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). Review of the Commissioner's final decision, however, is limited to determining whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (citations omitted). Evidence is substantial if it does "more than create a suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Universal Camera Corp. v. NLRB.*, 340 U.S. 474, 477 (1951) (citation omitted).[3]

Upon review, the Court may "enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" pursuant to sentence four of

---

[3] As this case was referred to a Magistrate Judge for a Report and Recommendation, to which objections have been filed, this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

§ 405(g). 42 U.S.C. § 405(g). In the alternative, the Court may, pursuant to sentence six, remand the case to the Commissioner for further action upon a showing of "new evidence which is material" and "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

A child under eighteen is disabled for the purposes of SSI if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). When determining whether a child is disabled, the Commissioner applies a three-step sequential evaluation process, determining whether (1) the child is doing substantial gainful activity, (2) has a medically determinable impairment or combination of impairments that is severe, and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in Appendix 1 of Subpart P of 20 C.F.R. Part 404. *See* 20 C.F.R. § 416.924(a).

An impairment medically equals a Listing when it is "at least equal in severity and duration to the criteria of any" impairment listed in Appendix 1. 20 C.F.R. § 416.926(a). To determine functional equivalence, in contrast, the Commissioner assesses "the interactive and cumulative effects of all the impairments for which [the Commissioner] ha[s] evidence, including any impairments [the child] ha[s] that are not 'severe,'" and considers all relevant factors including—but not limited to—how well the child can initiate and sustain activities, how much extra help is necessary, the effects of structured or supportive settings, and the effects of medications or other treatment. *Id.* § 416.926a(a). The Commissioner further assesses how the child functions in six domains: acquiring and using information, attending and completing tasks,

interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. *See id.* § 416.926a(b)(1). An impairment functionally equals a Listing when it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* § 416.926a(a).[4]

In her request for review, Mills-Sorrells argues the ALJ erred in determining, at step three of the applicable sequential evaluation process, Maziah's severe impairment did not meet, medically equal, or functionally equal the severity of an impairment described in the Listing of Impairments. The Magistrate Judge recommended this Court deny Mills-Sorrells's request for review, concluding the ALJ sufficiently analyzed whether Maziah's impairment met, medically equaled, or functionally equaled a Listing, and made findings supported by substantial evidence. Mills-Sorrells raises three objections to the Magistrate Judge's Report, arguing the Magistrate Judge erred in concluding the ALJ's finding that Maziah was not disabled was supported by substantial evidence because the ALJ (1) failed to properly consider as part of the functional equivalence analysis the amount of extra help Maziah requires compared to children without impairments in the domain of moving about and manipulating objects; (2) made no findings about whether Maziah's impairment was medically equal to Listing 101.02; and (3) erroneously discounted early intervention reports on Maziah's functioning.

---

[4] A child has an extreme limitation in a domain when her impairment "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities," whether the impairment "limits only one activity or . . . several activities." 20 C.F.R. 416.926a(e)(3)(i). Notably, an extreme limitation "does not necessarily mean a total lack or loss of ability to function." *Id.* If the child is not yet age three, she has an extreme limitation if she "function[s] at a level that is one-half of [her] chronological age or less" or has a standardized test score "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [her] day-to-day functioning in domain-related activities is consistent with that score." *Id.* § 416.926a(e)(3)(ii)-(iii); *see also id.* § 101.00B2(c)(2) (noting for very young children, "an extreme level of limitation means such skills or performance at no greater than one-half of age-appropriate expectations based on an overall developmental assessment").

Mills-Sorrells first contends the Magistrate Judge erred by concluding the ALJ's conclusion that Maziah only had a marked limitation in the domain of moving about and manipulating objects was supported by substantial evidence because the ALJ failed to consider all factors potentially affecting Maziah's functioning, including the extent Maziah could function without extra help. *See* 20 C.F.R. § 416.924a(b)(5)(i)-(ii); 20 C.F.R. § 416.926a(a).[5]

When assessing a child's functioning, the ALJ must "set forth the reasons for h[er] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Although not required to use "particular language or adhere to a particular format," the ALJ must insure "explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004). The domain of moving about and manipulating objects assesses a child's "gross and fine motor skills." 20 C.F.R. § 416.926a(j). In determining Maziah's functioning in this domain, the ALJ considered Mills-Sorrells's hearing testimony that Maziah was completely unable to use her left arm and her movement and overall balance were impacted as a result. R. 29. Ultimately, relying upon early intervention records, the ALJ characterized Maziah's impairment as a 33% delay in physical development, noting while Maziah's balance issues interfered with her ability to move about independently, she could still independently sit up from lying, scoot on her bottom, and crawl "army man" style. R. 29.

---

[5] Mills-Sorrells also argues Maziah has a per se, extreme disabling limitation, as the evidence demonstrates every major peripheral joint on her left side is impaired and she has no function on her left side. Because Maziah can only use one arm, in other words, the ALJ should have found she functions at half the level of same-aged children without impairments in all activities requiring the use of both arms or hands. The Court is unable to find support for such a reading of the SSI regulations and Listings, nor support in the record for Mills-Sorrells's contention that because Maziah only has one functioning shoulder, arm, and hand, her functioning is necessarily only "at a level that is one-half of [her] chronological age or less," 20 C.F.R. 416.926(e)(3)(ii), or "no greater than one-half of age-appropriate expectations," *id.* § 416.926a(e)(3)(ii)-(iii).

Although the Magistrate Judge concluded the ALJ adequately considered the degree of help Maziah needs to function, the Court agrees with Mills-Sorrells that the ALJ did not properly consider the record evidence and thus, her findings are not supported by substantial evidence. In her decision, the ALJ accurately recited the applicable standards, noting she evaluated the "whole child" and "how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments," in accordance with 20 C.F.R. § 416.926a(b) and (c), and SSR 09-1p. R. 21. She also noted examples of appropriate functioning for young infants and older infants or toddlers without impairments, as well as limitations children of various ages could manifest in the domain of moving about and manipulating objects. But she did not compare Maziah's functioning to that of a same-aged child without Klumpke's paralysis or expressly assess how much assistance Maziah requires to function like a non-impaired same-aged child. *See* 20 C.F.R. § 416.924a(5)(i) (indicating the ALJ must consider how independently a claimant is able to initiate, sustain, and complete activities "compared to other children [her] age who do not have impairments," including "the range of activities" a claimant performs, her ability to perform them independently, the pace of the activities, and the effort required to perform the activities); *id.* § 416.924a(5)(ii) (indicating the ALJ must consider how much "extra help [a claimant] need[s] . . . to participate in activities like other children [her] age without impairments"). Under the SSA's Social Security Rulings, a child who "needs a person, . . . treatment, device, or structured, supportive setting to make h[er] functioning possible or improve the functioning . . . . has a limitation, even if [s]he is functioning well with the help or support." Soc. Sec. Ruling 09-01p (stating the more help a child receives beyond what would be

expected for a child the same age without impairments, the less independently the child functions and the more severe the SSA will find the limitation).[6]

In fact, the record indicates Maziah requires considerable extra help and effort to function like a similar-aged child without an impairment. The ALJ characterized Maziah as being able to accomplish a number of tasks on her own without comparing Maziah's abilities with those of a non-impaired child.[7] But, as the ALJ noted, Maziah is "unable to participate in bilateral playful activity due to non-functional left hand," R. 29, has "balance issues affecting her ability to move about independent of support," R. 29, and has a "serious physical limitation (e.g., needing help or assistance from an adult because she is unable to transfer toys from hand to hand)," R. 26. Further, in order to get up from the floor, Maziah uses her chin in the place of her left arm, unlike a child without her impairment. R. 46-47. Although she is able to use one arm to pull herself along the ground, it is clear a same-aged child without her impairment would be able to crawl without such an adaption. Her paralysis has resulted in other dangers as well: Maziah sustained a fracture in her left arm after falling off a couch, but the fracture was diagnosed only because of swelling in her left arm the next morning. R. 55-56. As the record indicates Maziah requires significant extra help compared to a child without her impairment, the ALJ's finding that Maziah suffers only from a marked impairment in the domain of moving about and manipulating objects is not supported by substantial evidence.

---

[6] While "Social Security Rulings do not have the force of law . . . once published, they are binding on all components of the SSA." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 n.4 (3d Cir. 2003).

[7] The Magistrate Judge opines the ALJ found "M.M. requires a large degree of help in certain activities . . . but does not require a great degree of help compared to non-impaired children of her age in other activities . . . ," Report 18, but the ALJ did not characterize her own findings as assessing what Maziah could do compared to a non-impaired child.

Mills-Sorrells next objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's finding that Maziah's impairments do not medically equal Listing 101.02. Mills-Sorrells argues this finding is not supported by substantial evidence because the ALJ made no specific findings about Listing 101.02 or any other Listing; she further argues the Magistrate Judge erred in concluding Maziah did not medically equal Listing 101.02 because the record did not reflect a gross impairment causing an extreme loss of function on *both* sides.

"For a claimant to show h[er] impairment matches a listing, [the impairment] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). In contrast, an impairment medically equals a Listing when it "is at least equal in severity and duration to the criteria of any listed impairment." 42 C.F.R. § 416.926(b). A claimant with an impairment who does "not exhibit one or more of the findings specified in the particular listing" may nonetheless have an impairment medically equivalent to the Listing if "[the claimant] has other findings related to [her] impairment that are at least of equal medical significance to the required criteria." *Id.*

Listing 101.02, which describes "major dysfunction of a joint(s)," requires "[i]nvolvement of one major peripheral joint in each upper extremity . . . resulting in inability to perform fine and gross movements effectively, as defined in 101.00B2c." 20 C.F.R. Part 404, Subpt. P, App. 1, Pt. B., § 101.00B2. Such an inability to perform fine and gross movements effectively "means an extreme loss of function of both upper extremities; i.e., an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities." *Id.* § 101.00B2c. Both parties agree the evidence before the ALJ demonstrates Maziah is completely impaired in every major peripheral joint on her left side, resulting in total

loss of function on that side. R. 219.  In concluding Maziah's impairments did not medically equal a Listing, the ALJ did not identify Listing 101.02 or any other Listing. In addressing Mills-Sorrells's argument that the ALJ erred by failing to identify Listing 101.02 or any other Listing, the Magistrate Judge concluded such a failure was not fatal, as the totality of the ALJ's decision was sufficiently developed to allow for meaningful judicial review.

The Court disagrees. In *Burnett v. Comm'r of Soc. Sec. Admin.*, the Third Circuit held an ALJ's findings regarding medical equivalence were insufficient to permit meaningful judicial review where the ALJ's analysis of the issue consisted of the statement that the claimant had established a severe impairment, but it did not equal the level of severity of any Listing. *See* 220 F.3d at 119. In contrast, in *Jones v. Barnhart*, the ALJ's findings on medical equivalence were sufficient when the ALJ expressly considered evidence related to lung diseases, lack of frequent hospitalization or emergency treatments, and other medical evidence in concluding the claimant's respiratory diseases did not meet or equal a Listing. *See* 364 F.3d at 503-04; *see also Maldonado v. Comm'r of Soc. Sec.*, 98 F. App'x 132, 125-36 (3d Cir. 2004) (finding the ALJ adequately supported a finding that plaintiff did not medically meet or equal the asthma Listing when the ALJ considered and discussed the number of physician interventions necessary to treat the plaintiff's condition).

In this case, the ALJ observed "although the claimant has a 'severe' impairment, it does not meet the criteria of any listed impairments" and "[i]n so finding, I have considered all of the claimant's impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." R. 20. She also noted "[n]o treating or examining physician has determined that the clinical findings are equivalent in severity to the criteria of any listed impairment," before

concluding, "disability cannot be established on the medical facts alone." *Id.* These statements are conclusory and do not allow for meaningful judicial review. *See Burnett*, 220 F.3d at 119. The ALJ's decision, "read as a whole," does *not* satisfy "the requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Jones*, 364 F.3d at 505.[8]

Further, the record developed below establishes Maziah's impairment medically equals Listing 101.02. While Maziah would have to demonstrate she suffered from a gross anatomical deformity involving at least *one* major peripheral joint such as the shoulder, elbow, or wrist in *each* upper extremity and a resulting inability to perform fine and gross movements effectively to meet Listing 101.02, the SSI medical equivalence regulations require Mills-Sorrells to demonstrate only that Maziah's impairment is of equal medical significance to the Listing. 20 C.F.R. § 416.926(b). In order to demonstrate her impairment results in inability to perform fine and gross movements effectively, Maziah must demonstrate the existence of "an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities" such as "reaching, pushing, pulling, grasping, and fingering in an age-appropriate

---

[8] The Magistrate Judge also concluded the totality of the ALJ's analysis was sufficiently developed to allow for meaningful judicial review because the ALJ considered physician reports, medical records, and testimony in her functional equivalence analysis. Report 14 & n.12. The functional equivalence analysis, however, involves substantially different criteria than those used to determine medical equivalence. *See A.H. ex. rel. Williams v. Astrue*, No. 09-6981, 2011 WL 1935830, at *18 (N.D. Ill. May 18, 2011); *see also Sabala ex rel. I.E.S. v. Astrue*, No. 10-1902, 2011 WL 4485913, at *2 (D. Colo. Sept. 28, 2011) (finding the ALJ committed legal error in failing to separately consider the "criteria of medical equivalence from those of functional equivalence"); *Prentice v. Apfel*, No. 96-851, 1998 WL 166849, at *4 (N.D.N.Y. Apr. 8, 1998) (noting "[m]edical equivalence is based upon medical evidence only"); *compare* 20 C.F.R. § 416.926 (stating the standards for medical equivalence), *with id.* § 416.926a (stating the standards for functional equivalence). *But see A. ex rel. Ayers v. Astrue*, No. 07-1060, 2008 WL 3200780, at *7 (D. Ariz. Aug. 6, 2008) (holding the same evidence can be applied toward evaluating medical equivalence and functional equivalence). That the ALJ may have considered various medical reports, records, and testimony in her functional equivalence analysis does not demonstrate she considered them with regards to the medical equivalence analysis, as she must.

manner to be able to carry out age-appropriate activities." 20 C.F.R. Part 404, Subpt. P, App. 1, Pt. B., § 101.00B2c. In reviewing the administrative record, the Magistrate Judge reaffirmed the ALJ's finding that Maziah suffers from a total loss of function on her left side as a result of her three disabled joints: shoulder, elbow, and wrist. Report 15. As a result—and as noted earlier—Maziah is unable to accomplish many age-appropriate activities—standing without assistance, drinking from a cup, engaging in bilateral play—as she has no use of her upper left extremity. In other words, Maziah's totally impaired left side interferes seriously with her ability to perform fine and gross movements in an age-appropriate manner. Thus, the ALJ's finding that Maziah's impairment does not medically equal any Listing is not supported by substantial evidence.[9] Substantial evidence, in fact, supports a finding that Maziah's impairment medically equals Listing 101.02.

Finally, Mills-Sorrells objects to the Magistrate Judge's conclusion that the ALJ properly discounted early intervention reports about Maziah as inconsistent with Mills-Sorrells's testimony about Maziah's limitations.[10] The Commissioner responds Mills-Sorrells failed to raise these arguments she now advances as to why the ALJ improperly discounted the reports in her opening brief. *See* Def.'s Resp. to Pl.'s Objs. 7-8; *see also* Pl.'s Objs. 23-24. As a result, the Commissioner contends the Court should find these arguments waived. *See Warren G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999). The Court agrees. In her opening

---

[9] In fact, upon Mills-Sorrells's second application for SSI benefits on Maziah's behalf, the medical reviewer for the state agency found Maziah's impairments medically equaled Listing 111.06, Motor dysfunction (due to any neurological disorder), even though there is no indication Maziah's condition worsened.

[10] The early intervention reports in the record consist of an eligibility determination form completed in January 2012, R. 338-40, session notes dating from August 2011 to October 2012, R. 302-36, 341-53, a function report completed by ChildLink Education Supervisor Katherine Crozier on November 12, 2012, R. 355-57, and an evaluation report dated July 31, 2012, R. 358-71.

brief, Mills-Sorrells asserts the ALJ erred by "failing to explain the reasons for discounting consistent evidence from treating and other sources," Pl.'s Br. & Statement of Issues 2, but she does not develop this argument later in the brief, except to note "[t]here is no medical evidence that contradicts the opinion of the Early Intervention specialist who has regular interactions with M.M. and who reported that M.M.[']s impairments impose marked and severe limitations in functioning," *id.* at 24. Because "a passing reference to an issue . . . will not suffice to bring that issue before" the Court, the Court finds these arguments waived. *Laborers' Int'l Union v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).[11]

Because the ALJ failed to assess the scope of extra help Maziah requires to function compared to a non-impaired child and failed to determine whether Maziah's impairment

---

[11] Even if these arguments were not waived, the Court finds the ALJ did not improperly discount the early intervention reports. Insofar as Mills-Sorrells contends the ALJ encouraged her to overstate Maziah's abilities and then improperly credited her testimony over the early intervention reports, a review of the record suggests otherwise. For instance, Mills-Sorrells argues the ALJ directed her testimony by introducing the word "cruising" to describe Maziah's ability to pull herself to stand and walk alongside a couch. R. 43. But the hearing transcript indicates the ALJ merely provided vocabulary to label a skill Mills-Sorrells herself first described, R. 43-44, and further, Mills-Sorrells's counsel helped her to clarify Maziah's ability to cruise later in the hearing, R. 58-59.

Insofar as Mills-Sorrells contends the ALJ erred by failing to credit Katherine Crozier's report that Maziah could do almost no physical activities aside from standing without help, the Court finds the ALJ satisfactorily explained Crozier's report was not consistent with a July 31, 2012, evaluation report indicating Maziah had greater physical abilities. R. 23, 261-65. Mills-Sorrells also seems to contend the ALJ erred in discounting Crozier's report, because it was actually consistent with Mills-Sorrells's hearing testimony and session reports about certain abilities, such as Maziah's balance, which affects her ability to walk, and her ability to manipulate objects like blocks. Pl.'s Objs. 21-22. But this argument does not satisfactorily explain why the ALJ should have credited the early intervention reports over Mills-Sorrells's testimony in some instances, while at other times crediting the reports because they were consistent with her hearing testimony. Finally, the Court agrees with the Commissioner that the July 2012 report of Maziah's treating neurologist, Dr. Yum, does not lend credibility to Crozier's report. While Dr. Yum explained Maziah was unable to move her left shoulder, elbow, wrists and hand, she did not evaluate Maziah's abilities to adapt or function without use of her left arm. R. 277-80. Thus, the Court does not find the ALJ improperly discounted early intervention reports in the record.

medically equaled an impairment in the Listings, the Court concludes the Commissioner's decision to deny SSI was not supported by substantial evidence. Because substantial evidence supports the conclusion that Maziah was disabled under Title XVI of the Social Security Act, as her impairment medically equals Listing 101.02, the Court will remand this case so the Commissioner may calculate and award the benefits Maziah is owed. *See Allen v. Bowen*, 881 F.2d 37, 44 (3d Cir. 1989) (directing an award of benefits is appropriate when the claimant has established a prima facie case of entitlement and the record was fully developed); *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986) (holding when substantial evidence on the record as a whole indicates a claimant is entitled to benefits, the court may direct an award of benefits in order to avoid further delay).

An appropriate order follows.[12]

BY THE COURT:


/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.

---

[12] In the alternative, Mills-Sorrells urges remand under sentence six of 42 U.S.C. § 405(g). Because the Court will remand this matter for further proceedings consistent with this Memorandum under sentence four, the Court will not address the arguments made by either party regarding sentence six.

15